IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHARLES B. ERWIN, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES OF AMERICA, | ) |
| Defendant and Third Party Plaintiff, | )  1:06CV59 |
| v. | ) |
| STEPHEN C. COGGIN, WILLIAM G. PINTNER, JAMES BARRY LIGHT, HARTSELL B. LIGHT, | ) |
| Third Party Defendants. | ) |

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on cross motions for summary judgment filed by Plaintiff Charles B. Erwin (doc. no. 46) and Defendant United States of America (doc. no. 45). Plaintiff filed this action after paying a portion of the amount allegedly due under a trust fund recovery penalty for unpaid payroll withholding taxes for GC Affordable Dining, Inc, ("GCAD"), assessed against him pursuant to 26 U.S.C. § 6672. The government counterclaimed for a total of $264,579 in unpaid assessments, penalties and interest for the fourth quarter of 1998 and the first three quarters of 1999. The motions have been fully briefed and the matter is ripe for

disposition. Because there has been no consent, I must address the motions by way of a recommendation. For the following reasons, it will be recommended that the court grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment.

## I. Facts

GCAD was formed in 1994 by Plaintiff, Steve Coggin, Geoffrey Grenert, and John Miracle to develop and operate five Golden Corral restaurant franchises in the Cleveland, Ohio area.[1] (Pl. dep. 25-26.) Plaintiff was initially a 33 percent shareholder in GCAD and a member of the board of directors, and he served as vice-president and assistant secretary of the corporation.

During the startup of GCAD operations, Plaintiff was involved in and personally guaranteed both the construction and operating lines of credit obtained by the corporation from First Union Bank. (Pl. dep. 42.) He also participated in lease negotiations and signed various lease related agreements for all the GCAD restaurant locations.[2] (Pl. dep. 52-53.) The shareholders, including Plaintiff, hired Paul D. Pugal and Steve Markley as the management team for GCAD; Pugal and Markley were responsible for the day-to-day operations of the company. (Pl. dep. 43.)

---

[1] The original investors were all businessmen in the Greensboro area.

[2] The original GCAD investors also set up a separate corporation, Tiffany, LLC, as a real estate holding company that leased the property or restaurants back to GCAD. (Pl. dep. 35-36.)

GCAD was never as successful as the investors envisioned. Plaintiff and the other shareholders terminated Markley in January 1997. (Pl. dep. 75-76.) At the direction of Plaintiff and Coggin, Pugal assumed the management duties after Markley was gone. By early 1998, however, the investors decided to terminate Pugal. (Pl. dep. 81.) Plaintiff at that time remained a one-third shareholder in the corporation.[3] GCAD hired William Pintner to manage the company. (Pl. dep. 89.) Plaintiff participated in the decisions to terminate Pugal and Markley and to hire Pintner. After Pintner was hired, Plaintiff continued to consult with Pintner regarding sales and operations. (Pl. dep. 88.) Plaintiff also monitored GCAD sales figures and profit and loss statements. (Pl. dep. 97.)

In May 1998, following a meeting with Plaintiff, Coggin and Pintner, the corporation hired Buddy Light Accounting & Tax Service ("Light Brothers") to do GCAD's payroll, accounts payable and withholding tax calculations and deposits.[4] The Light Brothers were to monitor GCAD's accounts and advise the corporation, through Pintner, of GCAD's financial operations. (Pl. dep. 105.) On several occasions, the Light Brothers requested that additional funds be loaned to the company or sought capital contributions from the shareholders. In 1998, GCAD lost $1.1 million.

---

[3] The other two shareholders were Coggin, one of the original investors, and Mark Cole, who had purchased his interest in the corporation in September 1997.

[4] Prior to this time, Pugal's wife performed the accounting and payroll services for GCAD.

In the third quarter of 1998, the Light Brothers paid the quarterly payroll taxes, although a portion amounting to $22,000 of the taxes was paid late. Plaintiff and the other shareholders, upon learning of the deficiency in December 1998, raised additional funds and forwarded $150,000 to the Light Brothers with instructions to not let the company be delinquent in its taxes again. (Pl. decl. ¶ 15; Pl. dep. 126.) Despite this admonition, however, over $100,000 in payroll taxes for the fourth quarter of 1998 went unpaid. Plaintiff contends that he was never informed of the 1998 fourth quarter tax delinquency, though Coggin testified that both he and Plaintiff were made aware of the situation during the 1994 fourth quarter. The Light Brothers testified that they informed Plaintiff and Coggin of the deficiencies. A fax memo sent from Barry Light to Plaintiff and Coggin on December 12, 1998, outlines various outstanding expenses and tax liabilities and notes that "[c]ash flow had not permitted me to be able [to] pay these amounts." (Light dep., Ex. 10.) Plaintiff testified that he never saw this fax. (Pl. dep. 111-113.)

GCAD's financial situation continued to worsen in 1999 and the company was unable to pay all of its creditors. The withholding taxes for the first three quarters of 1999 were not paid in full.[5] In August 1999, Coggin personally traveled to the Light

---

[5] Because partial payments were made during each quarter, and fees and penalties were assessed, it is difficult to determine exactly how much was owed at any point. The supplemental declaration of Charles Link, the IRS revenue officer assigned to this matter, sets forth in greater detail the withholding tax liabilities for the four quarters at issue, together with the payments, penalties and other debits and credits for GCAD.

Brothers' offices in West Virginia to review the company books. Plaintiff admits that, following this meeting, he learned of the tax delinquencies. (Pl. dep. 229.) Plaintiff asserts that he immediately contacted the Light Brothers and directed them to make every effort to remit the taxes owed. Plaintiff asserts that the shareholders made a capital contribution of $50,000 in December 1999 so that GCAD could bring its withholding tax obligations current. (Pl. decl. ¶ 18.) This $50,000 payment was credited to the 1999 third quarter delinquency, but the taxes were not paid in full. (Link supp. decl. ¶ 10.) In late 1999, Plaintiff's own management company, Chelda, took over GCAD's accounting functions, including payroll and withholding tax matters.[6] (Pl. dep. 211.) Other bills were paid during this period, including lease payments and supplier invoices. (Pl. dep. 226-28.) From August to December 1999, GCAD's four remaining restaurants generated over $2 million in sales revenue. In 2000, the remaining GCAD restaurants generated $2.9 million in gross receipts. (Pl. dep. 167.) GCAD's outstanding tax liability was not paid, however.[7] In late 2000, Coggin sold his remaining stock to Plaintiff, who then became the 100 percent owner of GCAD. By the end of 2000, Plaintiff made the decision to close the business permanently. By 2001, GCAD was out of business. (Pl. dep. 167.)

---

[6] Chelda is a corporation that owns numerous Ham's Restaurants. Plaintiff owns 100 percent of Chelda stock. (Pl. dep. 16.)

[7] GCAD bank statements show that substantial deposits were made into the operating account during the months from August 1999 through December 1999. (*See* Barry Light dep. 196-97.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. International Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

## B. Liability under 26 U.S.C. § 6672

Federal law requires that employers withhold from their employees' paychecks their shares of federal social security taxes and income taxes. *See* 26 U.S.C. §§ 3102(a) and 3402(a). The employer holds the withheld taxes 'in trust' for the United States and must pay them over to the government on a regular basis. If an employer withholds the taxes from its employees but fails to remit them, the government must nevertheless credit the employees for having paid the taxes and seek the unpaid funds from the employer. The relevant statute, 26 U.S.C. § 6672(a), provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Liability under section 6672, thus, requires proof that the actor (1) was a "responsible person" under a duty to collect, account for, and pay over trust fund taxes, and (2) willfully failed to discharge his duty. *Turpin v. United States*, 970 F.2d 1344, 1347 (4th Cir. 1992). A party is not presumed to be a "responsible person," however, merely on the basis of his title. *See O'Connor v. United States*, 956 F.2d 48, 51 (4th Cir. 1992) (titular authority is not sufficient; substance of circumstances must demonstrate that officer exercises and uses authority over financial affairs or is under a duty to do so.) The Fourth Circuit has stated that, in determining

responsibility under section 6672, the "crucial inquiry [is] whether the person had the effective power to pay taxes - that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay taxes owed." *Plett v. United States*, 185 F.3d 216, 219 (4th Cir. 1999) (quoting *Barnett v. I.R.S.*, 988 F.2d 1449, 1455 (5th Cir. 1993)). Among the factors indicative of the requisite authority over the corporate taxpayer's finances or general decision making to qualify an individual as a "responsible person," are:

> whether the employee (1) served as an officer of the company or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees.

*Id.* These factors are to be evaluated together; no single factor is dispositive or determinative of authority. *Barnett*, 988 F.2d at 1455. There can be more than one person in a corporation who qualifies as a "responsible person", *Plett*, 185 F.3d at 219, and section 6672 applies to all responsible persons, not just the most responsible person. *Turnbull v. United States*, 929 F.2d 173, 178 (5th Cir. 1991).

*1. Responsible person*

Crediting all factual assertions which favor Plaintiff, the court nonetheless concludes that as to who is the "responsible person" under 26 U.S.C. § 6672, no genuine issue of material fact precludes summary judgment for the Government, and summary judgment is therefore appropriate.

-8-

Upon review of the substance of Plaintiff's authority within GCAD, and applying the *Plett* factors, it is clear and beyond genuine issue that Plaintiff had the authority to direct that the tax payments be made. Concrete indications of Plaintiff's authority include the fact that he was involved in most, if not all, of the major decisions regarding GCAD, including lease negotiations, and hiring of the management team and the accountants who performed services for GCAD. In fact, all but one of the *Plett* factors go in the Government's favor.

### a. Board of Directors

While an individual's title is not necessarily determinative, it is a factor to be considered. *O'Connor*, 956 F.2d at 50. Plaintiff here was a founder, shareholder and officer of GCAD. He started as a one-third shareholder, but by 2000 he owned 100 percent of the GCAD stock. He also served as Secretary and Treasurer during the entire period, and as Vice-President in the late 1990s and President as of February 1, 2000. This factor clearly favors the Government's position that Plaintiff was a "responsible person."

### b. Control of company payroll

Plaintiff admits that, on several occasions, he and the other shareholders attempted to infuse capital into the corporation to pay the delinquent payroll taxes. In fact, Plaintiff admits that when he "learned that the Light Brothers had not satisfied [the withholding tax] obligations the shareholders raised capital and remitted $150,000 to the Light Brothers, expressly instructing the Light Brothers to cure the

-9-

tax deficiency." (Plaintiff's memo in support of s.j. 12). Clearly, then, Plaintiff viewed himself (together with the other shareholders) to be responsible for payment of the payroll taxes and further had the authority to order that the taxes be paid. There is no evidence that Plaintiff himself personally oversaw the payroll, but there is evidence that he participated in the decision to hire the accountants who took care of the day-to-day payroll operations. Moreover, in late 1999, Plaintiff put his own management company, Chelda, in charge of GCAD's accounting functions, including payroll and withholding tax matters. (Pl. dep. 212.)

*c. Payment of creditors*

The evidence also shows that Plaintiff had decision-making authority over which creditors would be paid. He signed personal guarantees to several food vendors, ensuring that those bills would be paid. In his deposition, Plaintiff admitted that lease payments and food vendors were paid out of gross receipts which were available even in 2000 to pay down the tax delinquency. Barry Light, one of GCAD's accountants, testified that Plaintiff regularly gave instructions as to which creditors should be paid, and at one point at the end of 1998, Plaintiff and Coggin instructed Light to pay rents and expenses "but nothing on the taxes." (Barry Light dep. 78). While Plaintiff may not have exercised his authority on a daily basis, he clearly had the power to direct which payments were made and when they would be made.

*d. Participation in day-to-day management*

Plaintiff was involved in many facets of the GCAD operations from its startup in 1994 to the close of business in 2001. Plaintiff participated in the hiring and firing

of GCAD's managers and accountants. He also participated in decisions regarding restaurant locations, negotiation of leases and other contracts, and personally guaranteed payments to food vendors so that they would extend credit to GCAD. In addition, Plaintiff admits that he reviewed weekly sales figures and monthly financial statements and visited the GCAD restaurants and met with the restaurant managers. According to Barry Light, daily sales figures for each store were faxed to Plaintiff and Coggin every day. (Barry Light dep. 68.) In fact, Barry Light and Pintner regarded Plaintiff's involvement to be on a daily basis. (Pintner dep. 33-34; Barry Light dep. 68.) Pintner testified that he "didn't do anything without [Coggin and Plaintiff's] awareness." (Pintner dep. 33.) Plaintiff testified that he reviewed the federal income tax returns for GCAD. (Pl. dep. 124.) Plaintiff clearly was more than a "passive investor" in GCAD. His participation in the operations of the corporation qualifies him as a responsible person.

*e. Check-writing authority*

There is no evidence in the record that Plaintiff had authority to write or sign checks on behalf of GCAD. Nevertheless, it is clear that, in light of his many roles in the corporation, he had the authority to direct checks be written and expenses be paid, and that he in fact exercised that authority on many occasions.

*f. Hiring/firing authority*

The final *Plett* factor is whether the individual had the authority to hire and fire employees. Plaintiff was actively involved in the hiring and firing of Markley, Pugal,

Pintner, and the Light Brothers, all of whom were management employees or, in the case of the Light Brothers, individuals performing professional services to GCAD. There is no evidence that Plaintiff was involved in the hiring and/or firing of the individual restaurant managers or employees, but his participation in the hiring of the corporate managers clearly shows that he had authority over employment decisions.

In analyzing these factors, the court is cognizant that no one factor is controlling, and, indeed, that the salient, deciding point is whether Plaintiff had the effective power to see that the taxes were paid. The evidence clearly shows that Plaintiff had that power, stemming from his actual authority and ability, in view of his status as a founder, director, officer and shareholder and his day-to-day involvement in GCAD. Simply because Plaintiff may not have been present on a daily basis does not change the fact that at any point, by virtue of his authority, Plaintiff could have had substantial input into financial decisions of the corporation, and in fact, on numerous occasions he exercised that authority. Based upon the evidence set forth, *supra*, Plaintiff clearly falls within the parameters of a "responsible person" under section 6672.[8]

---

[8] Plaintiff's deposition alone is replete with examples of indicia of "responsible persons." For example, Plaintiff was questioned about the hiring of Pugal and Markley:

Q: Is is true that had neither you nor Steve Coggin approved, Mr. Pugal and Mr. Markley wouldn't have been hired?
A: That would be a fair assessment.

(Pl. dep. 43.) Later, in discussing various leases which GCAD entered into, Plaintiff stated that he was authorized to sign contracts on behalf of the coporation. (*Id.* at 53.)

2. Willfulness

To determine whether a responsible person "willfully" failed to collect, account for or remit payroll taxes to the United States, the court must "inquire whether the 'responsible person' had 'knowledge of nonpayment or reckless disregard of whether the payments were being made.'" *Plett*, 185 F.3d at 219 (citing *Turpin*, 970 F.2d at 1347). A responsible person's intentional preference of other creditors over the

---

Plaintiff also testified about the Light Brothers:

> Q: To whom did you complain about the lack of information from the Light Brothers?
> A: Probably relayed it to Coggin.
> Q: Now, you had the authority to demand that you receive timely financial information, didn't you, sir?
> A: Oh, yeah.
> \* \* \*
> Q: Okay. You had – you and Mr. Coggin jointly had the authority to fire the Light Brothers if you saw fit?
> A: Which we did.

(*Id.* at 138.) Plaintiff later testified about Chelda taking over the accounting functions after the Light Brothers were terminated:

> Q: And who was doing the accounts payable function?
> A: Chelda.
> Q: And who was performing the deposits of federal withholding tax?
> A: That would have been Chelda.
> Q: And who was filling out the Form 941s?
> A: Somebody, one of my payroll clerks, I assume.
> Q: Who decided that Chelda would take over the payroll function from the Lights when the Lights were terminated?
> A: I guess it was me.
> Q: And you similarly decided that Chelda would handle the federal withholding tax duties?
> A: Along with the payroll.

(*Id.* at 212).

-13-

United States with knowledge of the nonpayment of payroll taxes establishes his willfulness as a matter of law. *Plett*, 185 F.3d at 219; *United States v. Pomponio*, 635 F.2d 293, 298 (4th Cir. 1980). An intentional preference is shown by establishing that the responsible person knew of or recklessly disregarded the existence of an unpaid payroll tax deficiency. *Plett*, 185 F.3d at 219; *Turpin*, 970 F.2d at 1347. One way in which willfulness may be established is to show that the responsible person made a "voluntary, conscious and intentional decision to prefer other creditors over the Government." *Greenberg v. United States*, 46 F.3d 239, 244 (3rd Cir. 1994).

Plaintiff asserts that because he was relying on "seasoned professional" accountants, he "had no reason to think that GCAD's IRS obligations were not being satisfied." (Pl. memo in support of s.j. 18). By the end of 1998, however, Plaintiff knew or had strong reason to know that GCAD was undergoing a financial crisis. In fact, in December 1998 Plaintiff learned that the Light Brothers had failed to make payroll tax deposits for a prior quarter. Plaintiff then made capital contributions and "strongly admonished" the Light Brothers to make timely tax payments in the future. His failure to monitor the situation after first becoming aware of the Light Brothers' actions is simply indefensible.

Even assuming, as Plaintiff claims, that he was not aware of the tax deficiencies until August 1999, his actions after that period show willfulness. During the third quarter of 1999, GCAD's payroll tax liability increased by $163,000, yet the corporation only made two tax deposits totaling $7,118.24. Thus, the withholding tax

-14-

deficiency at the end of the third quarter of 1999 was over $150,000. Plaintiff made a capital contribution of $50,000, but GCAD still owed over $100,000 for that quarter. Moreover, prior deficiencies from 1998 and the first two quarters of 1999 were not satisfied. During this entire period, however, other creditors were paid and substantial sales revenues were generated. To be sure, GCAD was struggling financially; Plaintiff asserts that rents and expenses were paid just to keep the doors open. Nevertheless, as the court noted in *Greenberg*, "[i]t is no defense that the corporation was in financial distress and that funds were spent to keep the corporation in business with the expectation that sufficient revenue would later become available to pay the United States." 46 F.3d at 244. It must also be noted that Plaintiff himself raised funds to pay the first tax deficiencies. At the very least, at that point, and as an officer and shareholder of the company actively involved in many corporate decisions, Plaintiff was on notice that tax liability was an issue which might again be a problem in the future and that it was critical to stay on top of the matter and prevent future tax delinquency. After all, "the government cannot be made an unwilling partner in a business experiencing financial difficulties." *Thibodeau v. United States*, 828 F.2d 1499, 1506 (11th Cir. 1987).

Although not yet addressed by the Fourth Circuit, courts in other circuits have held that even if a "responsible person" is unaware that withholding taxes have gone unpaid in past quarters, a responsible person who becomes aware that taxes have gone unpaid in past quarters in which he was also a responsible person, is under a

-15-

duty to use all "unencumbered funds" available to the corporation to pay those back taxes. *See Thosteson v. United States*, 331 F.3d 1294, 1300-01 (11th Cir. 2003); *United States v. Kim*, 111 F.3d 1351, 1357 (7th Cir. 1997); *Honey v. United States*, 963 F.2d 1083, 1089 (8th Cir. 1992); *Mazo v. United States*, 591 F.2d 1151, 1157 (5th Cir. 1979). This duty extends not only to funds available to the corporation at the time the responsible person becomes aware, but also to any unencumbered funds acquired thereafter. *Thosteson*, 331 F.3d 1294. As explained by the Eleventh Circuit:

> If the responsible person fails to use such unencumbered funds to satisfy the past unpaid liability, he is deemed personally liable for the taxes that went unpaid in the past while he was responsible. The responsible person deemed liable for the unpaid liability of past tax quarters is considered to have "willfully" failed to pay over the taxes for those past quarters, even though he was unaware at that time that the taxes were going unpaid.

*Thosteson*, 331 F.3d at 1301. Plaintiff was under a duty to reduce GCAD's accrued tax liability with funds acquired after the taxes had been withheld and the funds, presumably, were dissipated. Thus, once Plaintiff was made aware of the unpaid tax liability, payments made to creditors other than the IRS constituted willful violations of section 6672.

Plaintiff, relying on *Turpin v. United States*, 970 F.2d 1344 (4th Cir. 1992), argues that his knowledge of GCAD's past tax deficiency "does not, as a matter of law, establish that he acted willfully with respect to the next deficiency." (Pl. memo. in resp. to def. m.s.j. 16-17). Plaintiff's reliance on *Turpin*, however, is misplaced,

-16-

because the plaintiff in that case was found, by a jury, to have neither known of nor to have recklessly disregarded the corporation's tax deficiency. Plaintiff here clearly knew of the tax deficiency as of August 1999, and there is evidence that GCAD generated over $5 million in gross receipts after that date. These funds were used to pay other creditors, including landlords and food vendors, together with employee wages, while the tax deficiencies remained unpaid. Moreover, even after the initial deficiencies were brought to Plaintiff's attention, he continued to entrust the financial management of the corporation to the Light Brothers, whom he knew to be unreliable. Under these facts, Plaintiff's reckless disregard demonstrates willfulness as a matter of law for the purposes of summary judgment.

*III. Conclusion*

Because Plaintiff is a responsible person under section 6672 and he willfully failed to pay withheld taxes to the IRS, **IT IS RECOMMENDED** that the motion of the United States for summary judgment (doc. no. 45) be **GRANTED** and Plaintiff's motion for summary judgment (doc. no. 46) be **DENIED**.

                                                Wallace W. Dixon
                                                United States Magistrate Judge

Durham, NC
November 27, 2007