IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHARLES B. ERWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant and | ) | 1:06CV59 |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN C. COGGIN, WILLIAM G. | ) | |
| PINTNER, JAMES BARRY LIGHT, | ) | |
| HARTSELL B. LIGHT, JR., | ) | |
| | ) | |
| Third Party | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on an unopposed Motion for Summary Judgment [Doc. #118] filed by the United States against Third Party Defendants James Barry Light ("Barry Light") and Hartsell B. Light, Jr. ("Buddy Light") (collectively "the Light Brothers").[1] In its

---

[1] As a matter of procedure, this case originated with Plaintiff Charles B. Erwin's ("Erwin") Complaint against the United States, seeking recovery of tax penalties assessed against him for unpaid employment taxes that were required to be withheld from the wages of the employees at GC Affordable Dining, Inc. ("GCAD"). In response to Erwin's Complaint, the United States filed a Counterclaim against Erwin and a Third Party Complaint against Stephen C. Coggin ("Coggin"), William G. Pintner ("Pintner"), and the Light Brothers (collectively, "the Third Party Defendants"), alleging liability for failure to pay federal withholding taxes pursuant to 26 U.S.C. § 6672. Thereafter, Erwin and the United States filed cross motions for summary judgment, and the Court entered final Judgment in favor of the United States and against Erwin.

Third Party Complaint, the United States alleges in separate counts that on or about September 8, 2004, the United States assessed against James Barry Light and Hartsell B. Light, Jr., pursuant to 26 U.S.C. § 6672, "a trust fund recovery penalty in the total amount of $252,678.36,[2] representing income and/or employment taxes that were required to be withheld from the wages of the employees of GC Affordable Dining, Inc. during taxable periods ending December 31, 1998, March 31, 1999, June 30, 1999, and September 30, 1999[,] and which were not paid over to the Government when due." (Third Party Compl. ¶¶ 27 & 34, [Doc. #9]). In its present Motion for Summary Judgment, the United States contends that there are no genuine issues of material fact regarding the Light Brothers' liability under 26 U.S.C. § 6672 and, therefore, the United States is entitled to judgment as a matter of law. The Light Brothers have not filed any Response to the United States' Motion. Therefore, pursuant to Local Rule 7.3(k),[3] the Court could summarily grant the United States' Motion in this case due to the Light

---

In addition, upon consent of the parties, the Court stayed this case as to the United States' claims against all of the Third Party Defendants pending resolution of Erwin's appeal of the Judgment against him. In 2010, the Fourth Circuit Court of Appeals affirmed the Court's Judgment as to Erwin. Thereafter, in 2011, the Court lifted the stay pursuant to an out-of-time Motion by the United States, and permitted the United States to file the present Motion for Summary Judgment against the Light Brothers.

[2] According to the United States' Motion and attachments, the United States seeks judgment against James Barry Light in the amount of $325,734.21, and against Hartsell B. Light, Jr. in the amount of $325,437.02, plus interest that has and will accrue according to law from March 26, 2012. The Court notes that to the extent that the Light Brothers are found liable under 26 U.S.C. § 6672, they will be jointly and severally indebted to the United States in the amounts set forth herein, plus the applicable interest accruing according to law. See Brounstein v. Unites States, 979 F.2d 952, 955 (3d Cir. 1992).

[3] "If a respondent fails to file a response within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." L.R. 7.3(k).

Brothers' failure to respond. However, as set forth below, the Court will undertake a full review of the evidence presented by the United States, which remains uncontradicted by the Light Brothers.

I.   FACTUAL BACKGROUND

The undisputed facts are as follows.[4]  In 1998, Third Party Defendant William Pintner ("Pintner") hired Buddy Light Accounting & Tax Services ("Buddy Light Accounting"), and thereby, the Light Brothers, to perform certain duties for GC Affordable Dining, Inc. ("GCAD"). Such duties ultimately included managing payroll and accounts payable, calculating employee withholding tax liability, preparing Form 941 federal withholding reports, and making federal withholding tax deposits.[5]  In his deposition, Barry Light testified that he oversaw the

---

[4] The uncontested factual background set forth herein is derived from the present Summary Judgment record, that is, the attachments to the United States' Motion for Summary Judgment. The United States contends, at least in part, that the Fourth Circuit opinion in Erwin v. United States, 591 F.3d 313 (4th Cir. 2010), sets forth undisputed facts regarding the Light Brothers, which tend to support a finding that the Light Brothers are liable under 26 U.S.C. § 6672, as a matter of law. However, the Court notes that to the extent that the Fourth Circuit found § 6672 liability in Erwin v. United States, such liability extended only to Charles Erwin, as the sole appellant in that matter, and not to any other party in this case. At the time of Erwin's appeal, the United States had not filed a motion for summary judgment against any other party in the case. Furthermore, the record before the Fourth Circuit in Erwin v. United States differs from that currently before the Court with respect to the Light Brothers. Therefore, with regard to the United States' present Motion for Summary Judgment against the Light Brothers, the Court will assess the liability of the Light Brothers within the bounds of the factual record specific to the present Motion, and will not rely on facts found exclusively within Erwin v. United States.

[5] In his deposition, Barry Light appears to contend that Buddy Light Accounting did not originally contemplate that it would make employee withholding tax deposits for GCAD. However, Barry Light admits in his deposition testimony that he undertook to make such tax deposits at certain points, and that he had the ability to make such deposits for GCAD. (Barry Light Dep. 228:11-231:15).

3

payroll operation for GCAD and completed the day-to-day work, while his brother, Buddy Light, assisted from time to time. (Barry Light Dep. 54:12-15; 54:23-55:8). With regard to the payroll process, the Light Brothers would "get the payroll information from each individual store and input it into [the] software system, issue checks, and calculate [GCAD's withholding tax] deposit." (Barry Light Dep. 24:6-11). The Light Brothers initiated this process by accessing the computer servers for each GCAD store and retrieving the relevant employee information. (Barry Light Dep. 47:5-16). After the Light Brothers calculated the compensation owed to each employee and the federal withholding taxes owed for the payroll period, they were responsible for issuing employee payroll checks and transferring the requisite withholding tax amount owed to the Internal Revenue Service ("IRS"). (Barry Light Dep. 50:19-51:8). Payment to the IRS was due within one week after each pay period ended. (Barry Light Dep. 51:2-8).

For purposes of making federal withholding tax payments, GCAD provided the Light Brothers with direct access to GCAD's operating account and authorized the Light Brothers to complete an electronic transfer of funds directly from GCAD's account to the IRS. (Barry Light Dep. 50:2-51:1). In this regard, GCAD granted the Light Brothers general authorization to pay the withholding taxes such that they did not need the signature of, or any specific authorization from, any person at GCAD in order to complete the electronic transfer of funds to the IRS. (Barry Light Dep. 123:2-11). Based on this payroll process, the Light Brothers were the first people to know the amount of federal withholding taxes owed by GCAD for each pay period, and were also the first people to know whether, and to what extent, such amount was paid. (Buddy Light Dep. 35:16-36:17).

In addition to calculating the withholding taxes due and completing the electronic transfer of funds to the IRS, the Light Brothers were responsible for writing checks on behalf of GCAD, including the payroll checks and the checks issued to various GCAD vendors and creditors. (Barry Light Dep. 238:11-16). To accomplish those tasks, Pintner provided the Light Brothers with a stamp bearing his signature.[6] (Barry Light Dep. 154:19-155:11; 155:20-156:6). Pintner did not place any limits on the Light Brothers' use of the signature stamp, and, as a result, the Light Brothers could use the signature stamp for "whatever documents" Pintner needed to be signed. (Barry Light Dep. 156:7-13). In terms of issuing the payroll checks, once the Light Brothers printed the checks and affixed Pintner's signature, they sent the checks to the GCAD stores or to Mr. Pintner for further distribution to the employees. (Barry Light Dep. 158:12-159:2). With regard to issuing vendor and other creditor checks, the Light Brothers received and maintained custody of the relevant invoices, and thereafter issued signed checks directly from the Buddy Light Accounting office to the GCAD vendors or creditors. (Barry Light Dep. 159:3-21).

For a brief period of time after GCAD hired the Light Brothers, GCAD was generating enough cash for the Light Brothers to timely make the electronic transfers for the federal withholding taxes owed. (Barry Light Dep. 46:5-12; 55:21-56:3). Sometime in the late summer of 1998, however, GCAD began experiencing financial problems and, from the fourth quarter

---

[6] It is not completely clear when Pintner provided the Light Brothers with the signature stamp. According to Barry Lights' deposition testimony, for at least some period of time after they were hired, the Light Brothers would draft the checks and send them to Pintner for his signature. (Barry Light Dep. 155:12-19).

5

of 1998, through the third quarter of 1999, GCAD's federal withholding taxes went unpaid, either in whole or in part. (Barry Light Dep. 173:10-16). During this time, the Light Brothers knew that GCAD owed, and was not paying over, withholding taxes, including the amount owed for any particular pay period, and the amount accruing over time.[7] (Barry Light Dep. 55:15-19; 56:8-12; Buddy Light Dep. 35:16-36:17). The Light Brothers repeatedly informed GCAD personnel, including Charles Erwin ("Erwin"), Stephen Coggin ("Coggin"), and Pintner, that the withholding taxes were due and owing, and, further, that GCAD did not have enough money to pay employee payroll, vendor and creditor obligations, and the withholding taxes in full. (Barry Light Dep.: 123:12-124-3). In addition, on two separate occasions in 1999, Buddy Light met with Pintner and Coggin, respectively, to discuss GCAD's outstanding tax liability and to come up with a proposed payment plan. (Buddy Light Dep. 44:10-21; 63:12-65:18). After each meeting, Buddy Light sent the proposed plan to the IRS on behalf of GCAD. (Buddy Light Dep. 59:20-60:7 & Ex. 60).

However, according to Barry Light's deposition testimony, Pintner, Erwin, and Coggin instructed the Light Brothers to continue issuing payroll checks and checks to certain vendors and creditors during the time period when GCAD owed federal withholding taxes. (Barry Light Dep. 65:6-24; 78:6-17; 124:13-17; 128:18-23; 165:8-15; 166:2-5; 190:24-191:3; 191:11-193:17; 243:2-3). Furthermore, on a number of occasions, the Light Brothers received instructions to

---

[7] Even though Barry Light testified that he conducted the day-to-day financial operations, he further testified that he kept his brother, Buddy Light, apprised of the fact that GCAD was not paying its federal withholding taxes. (Barry Light Dep. 56:8-21). Buddy Light further testified that he knew that GCAD owed federal withholding taxes. (Buddy Light Dep. 37:20-38:18).

6

issue checks directly to either Erwin, Pintner, or Coggin in amounts that the Light Brothers knew would limit or prohibit payment of the withholding taxes owed to the United States. (Barry Light Dep. 119:4-14; 139:2-140:2; 203:19-205:3). The Light Brothers complied with these instructions and issued thousands of checks to GCAD employees, including checks to Buddy Light Accounting in the amount of $4,900 per month, to various GCAD vendors and creditors, including checks for utilities, rent, and food services, and to Pintner, Erwin, and Coggin at their request. (Barry Light Dep. 35:18-36:7; 174:2-16; 210:18-211:2; 211:10-15). According to Barry Light, no one at GCAD expressly instructed the Light Brothers not to pay the employee withholding taxes at any point; however, the Light Brothers did not deposit by electronic transfer, or otherwise send to the IRS, the full amounts owed in federal withholding taxes during the time period relevant to this case.[8] (Barry Light Dep. 243:15-24).

II. DISCUSSION

   A. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material

---

[8] In addition to failing to submit the withholding taxes owed, Barry Light admits in his deposition testimony that although he knew GCAD owed federal withholding taxes, the Light Brothers filed at least one false Form 941 on behalf of GCAD, indicating that GCAD owed zero dollars in taxes for the relevant quarter. (Barry Light Dep. 142:9-22; 144:22-145:19; 146:21-147:1 & Ex. 21).

7

fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1349, 89 L. Ed. 2d 538 (1986). When making a summary judgment determination, the court must view the evidence and all justifiable inferences from the evidence in the light most favorable to the non-moving party. Zahodnick, 135 F.3d at 913. However, the party opposing summary judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

  B. Liability under 26 U.S.C. § 6672

Federal law requires employers to withhold certain taxes from the wages of their employees and pay over the withheld sums to the United States. See 26 U.S.C. §§ 3102(a) & 3402(a). These withheld amounts are referred to as "trust fund taxes" because employers hold the withheld taxes in "a special fund in trust for the United States." 26 U.S.C. § 7501(a); Plett v. United States, 185 F.3d 216, 218 (4th Cir. 1999). "If an employer withholds trust fund taxes but fails to remit them to the government, [26 U.S.C. § 6672] imposes personal liability for the amount of taxes owed upon 'those officers or employees (1) responsible for collecting,

8

accounting for, and remitting payroll taxes, and (2) who willfully fail to do so.'"[9] Newbill v. United States, 441 Fed. App'x 184, 187 (4th Cir. 2011) (quoting Plett, 185 F.3d at 218)). The Court will address each prong of the § 6672 liability analysis in turn.

        1.      "Responsible Person" under 26 U.S.C. § 6672

The Fourth Circuit has developed a non-exhaustive list to inform courts' "responsible person" determination, including "whether the employee (1) served as an officer of the company or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees." Plett, 185 F.3d at 219. With those factors in mind, "the crucial inquiry is whether the person has the 'effective power' to pay the taxes–that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed." Plett, 185 F.3d at 219 (quotations and citation omitted). "'Put another way, the essential inquiry is whether a person has significant, but not necessarily exclusive, authority over corporate finances or management decisions.'" Newbill, 441 Fed. App'x at 187 (quoting Erwin v. United States, 591 F.3d 313, 321 (4th Cir. 2010)).

In the present case, the undisputed facts demonstrate that the Light Brothers are

---

    [9] In relevant part, § 6672 states that "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672(a).

"responsible persons" for § 6672 purposes. Specifically, although the Light Brothers were not officers or directors of GCAD, it is clear that they had substantial control over GCAD's payroll operations. In fact, Barry Light testified in his deposition that he oversaw the payroll operations for GCAD and was engaged in the day-to-day functions thereof. In that regard, the Light Brothers had direct access to the individual GCAD store computer servers, from which they could, and did, retrieve the information necessary to calculate compensation and withholding tax information for each employee. Furthermore, the Light Brothers had seemingly unfettered access to the GCAD operating account and general authority to draw from that account to complete an electronic transfer of funds directly to the IRS at the end of each pay period. Based on their duties with GCAD, the Light Brothers were the first people to know the amount of withholding taxes GCAD owed for each pay period and the amount of unpaid taxes that were accruing over time, and were the persons tasked with paying over the appropriate tax amounts when owed.

In addition, for purposes of paying employees and various GCAD vendors and creditors, the Light Brothers had the authority, and the responsibility, to write and issue checks on behalf of GCAD. Although neither of the Light Brothers signed their own names to any GCAD checks, they were granted apparently exclusive custody of Pintner's signature stamp and were authorized to use the stamp without express limitation. Therefore, the Light Brothers had the ability to issue checks on behalf of GCAD for any purpose, and did in fact issue checks during the relevant period of time. Specifically, the evidence shows that the Light Brothers used the signature stamp during the period relevant to this case to issue thousands of checks to

10

GCAD employees, including Buddy Light Accounting, to various vendors and creditors, and to Pintner, Erwin, and Coggin directly.

Furthermore, although the evidence suggests that the Light Brothers often issued checks at the instruction of Pintner, Coggin, and Erwin, the evidence shows that, at least with regard to paying the taxes, the Light Brothers did not need express authority to complete the electronic transfer of funds to the IRS at any given time, and, further, that no one at GCAD ever instructed the Light Brothers not to timely complete the electronic transfer of funds as withholding taxes came due. Moreover, there is no evidence that anyone actually prevented the Light Brothers from timely paying the withholding taxes, which they had the general authority to pay, or that the Light Brothers were under any threat regarding the payment of the taxes owed. See Lyons v. United States, 68 Fed. App'x. 461, 469 (4th Cir. 2003). Cf. Howard v. United States, 711 F.2d 729, 734 (5th Cir. 1983) (finding that the fact that a superior may have fired the defendant for paying the taxes would not necessarily make the defendant less responsible for paying the amounts owed). The Light Brothers, however, did not complete the timely transfers of federal withholding taxes, and those taxes went unpaid beginning in the fourth quarter of 1998, through the third quarter of 1999. Based on the foregoing, the Court concludes that the United States has presented undisputed evidence sufficient to establish, as a matter of law, that the Light Brothers were responsible for paying the withholding taxes under § 6672.

    2.    Willfulness under 26 U.S.C. § 6672

Having concluded that the Light Brothers were responsible for paying the withholding

11

taxes within the meaning of the statute, the Court will now turn to whether, as responsible persons, the Light Brothers willfully failed to pay over the trust fund taxes. In this regard, the inquiry focuses on "whether the 'responsible person' had 'knowledge of nonpayment or reckless disregard of whether the payments were being made.' A responsible person's intentional preference of other creditors over the United States establishes the element of willfulness under § 6672(a)." Plett, 185 F.3d at 219 (internal citations omitted). "'[S]uch an intentional preference occurs when the responsible person knows of or recklessly disregards an unpaid deficiency.'" Newbill, 441 Fed. App'x at 188 (quoting Erwin, 591 F.3d at 325) (alterations in original). "'[W]hen a responsible person learns that withholding taxes have gone unpaid . . . he has a duty to use all current and future unencumbered funds available to the corporation to pay those back taxes.'" Id. (quoting Erwin, 591 F.3d at 326) (alterations in original).

In the present case, it is undisputed that not only did the Light Brothers know that GCAD owed federal withholding taxes during the time period in question, they were the first to know that information. It is also undisputed that even though the Light Brothers knew that GCAD did not have sufficient funds to pay the payroll, the vendors and creditors, *and* the withholding taxes owed, and they knew that federal withholding taxes were due and owing, the Light Brothers issued thousands of checks to GCAD employees, including checks to Buddy Light Accounting, to various GCAD vendors and creditors, including checks for utilities, rent, and food services, and to Pintner, Erwin, and Coggin at their request. The Light Brothers knew that the money issued through these checks could have been used to satisfy the amounts owed to the United States in unpaid federal withholding taxes. Therefore, by issuing checks to

12

persons and entities other than the IRS, during a time when the Light Brothers knew that GCAD owed withholding taxes, the Light Brothers intentionally preferred other creditors over the United States. Based on the foregoing, the Court concludes that the United States has presented undisputed evidence sufficient to establish, as a matter of law, that the Light Brothers willfully failed to pay over federal withholding taxes. Accordingly, the Light Brothers are jointly and severally indebted to the United States for the unpaid withholding taxes assessed against them, plus the applicable interest accruing according to law.

III. CONCLUSION

In light of the uncontested nature of the United States' Motion for Summary Judgment, and based on the undisputed evidence presented in this case, the Court concludes that the Light Brothers are, as a matter of law, liable for the unpaid withholding taxes assessed against them pursuant to 26 U.S.C. § 6672. In that regard, the Light Brothers are jointly and severally indebted to the United States as follows: James Barry Light in the amount of $325,734.21; and Hartsell B. Light, Jr. in the amount of $325,437.02; plus the interest that has and will accrue according to law from March 26, 2012. As such, the Court will grant the United States' Motion for Summary Judgment as against the Light Brothers, and order that the United States shall recover from the Light Brothers, jointly and severally, the amounts set forth herein.[10]

---

[10] The Court notes that although all claims by the United States against the Light Brothers have now been resolved, claims by the United States against the other Third Party Defendants, namely, Stephen Coggin and William Pintner, remain unresolved at this time. To date, the United States has not provided the Court with any basis for granting a final Judgment against the Light Brothers under Rule 54(b) of the Federal Rules of Civil Procedure. As such, the Court declines to issue a final Judgment against the Light Brothers at this time. To the extent that the United States seeks a final Judgment against the Light Brothers, the United States

13

IT IS THEREFORE ORDERED that the United States' Motion for Summary Judgment [Doc. #118] is hereby GRANTED, and the United States shall recover from the Light Brothers the indebted amounts set forth herein. In that regard, Light Brothers are jointly and severally indebted to the United States as follows: James Barry Light in the amount of $325,734.21; and Hartsell B. Light, Jr. in the amount of $325,437.02; plus the interest that has and will accrue according to law from March 26, 2012.

This the 5th day of February, 2013.

/s/ James A. Beaty
United States District Judge

---

may file a Motion to that effect for the Court's consideration.