IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHARLES B. ERWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant and | ) | 1:06CV59 |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN C. COGGIN, WILLIAM G. | ) | |
| PINTNER, JAMES BARRY LIGHT, and | ) | |
| HARTSELL B. LIGHT, JR., | ) | |
| | ) | |
| Third Party | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Motion for Summary Judgment [Doc. #154] filed by Defendant and Third Party Plaintiff United States ("United States") against Third Party Defendant William G. Pintner ("Pintner"). In its Third Party Complaint [Doc. #9], the United States alleged that on or about September 8, 2004, the United States assessed a penalty in the amount of $252,678.36 against Pintner for unpaid federal employer withholding taxes of G.C. Affordable Dining ("GCAD") for the tax quarters ending December 31, 1998, March 31, 1999, June 30, 1999, and September 30, 1999. Pursuant to the Internal Revenue Code, 26 U.S.C. § 6672, the United States claimed that Pintner is personally liable for these tax deficiencies

associated with GCAD. The United States asserted that Pintner was a responsible person under § 6672 who willfully failed to pay the employer withholding taxes for periods of the years 1998 and 1999. Pintner denied that he was a responsible party and that he willfully failed to pay the taxes at issue. For the reasons discussed below, the Court will grant the United States' Motion for Summary Judgment.

I.   FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts are as follows. In June 1994, Charles Erwin, Stephen Coggin, and two other businessmen[1] created GCAD to serve as a franchisee of Golden Corral Franchising System, Inc. ("Golden Corral"). GCAD operated five Golden Corral restaurants. Although the company realized limited early profits, GCAD began struggling financially soon after its formation. In the beginning of 1997, the owners decided to fire one of the company's two day-to-day managers. After consolidating the day-to-day operations under the remaining manager, the business continued to experience difficulties. In 1998, the owners of GCAD decided to fire the day-to-day manager and hired Pintner as a replacement.

Pintner had an extensive background in managing Golden Corral restaurants. He had worked for Golden Corral beginning in 1984, where he eventually attained the position of Regional Vice President. In that role he oversaw the operations of 125 Golden Corral restaurants. In 1993, he left Golden Corral and created a Golden Corral franchisee that owned and operated approximately 62 restaurants. Pintner served as the President and Chief Executive

---

[1] The other two businessmen eventually ended their affiliations with GCAD, and neither have been a party to the present matter.

Officer with that franchisee.

Pintner joined GCAD as the business's Vice President of Operations. In that position, Pintner managed the business and was tasked with improving GCAD's restaurants' performance. As Pintner stated in his deposition, some people may have perceived Pintner as actually being a partner, CEO, or president "because [he] was running the thing [GCAD]." (Pintner Dep. [Doc. #161-1], at 45:14.) Pintner coordinated closely with Erwin regarding all aspects of the business: "I spoke to Charlie [Erwin] every day about sales and . . . called him at least once or twice a day to let him know how business was, how things were going, how our new managers were doing, how our stores were operating, things of that nature." (Id. at 33:23-34:2.)

In overseeing GCAD's operations, Pintner negotiated advertising contracts for GCAD and worked closely with Erwin and Coggin in creating a payment plan for overdue invoices with Lopresti, GCAD's main grocery supplier. Pintner had authority to hire and fire employees, as well as authority to write checks for GCAD. One of Pintner's initial recommendations to help turn around the business was hiring James Barry Light and Hartsell B. Light, Jr. ("the Light Brothers") to manage the business's accounting and payroll needs. Pintner worked closely with the Light Brothers in his role overseeing GCAD's operations. Pintner received and reviewed bills and invoices before forwarding them on to the Light Brothers. At some point, a signature stamp of Pintner's signature was made and given to the Light Brothers. The Light Brothers had the authority to use the stamp on company checks and on tax returns. Pintner testified that "[t]hey could use my stamp on anything they wanted to. . . . I didn't tell them not to, but I didn't

3

tell them to do it, either. I knew they were using that facsimile for checks and for whatever needed my signature." (Id. at 65:16-25.)

Pintner was aware of GCAD's financial difficulties from the beginning of his employment with GCAD. According to Pintner, the business's cash flow "started out behind, and it just stayed there." (Id. at 57:6-7.) Pintner was aware of GCAD falling behind on rent payments as well as payments to other vendors. Indeed, vendors would often contact him directly to demand payment. Although Pintner stated he never looked at GCAD's tax returns, he did review individual stores' profits and losses statements which indicated that the restaurants were losing money. Pintner was aware throughout his tenure with GCAD that the company generally did not have enough money to cover outstanding obligations and that Erwin and Coggin frequently had to make capital contributions to GCAD. Shortly after Pintner joined GCAD, the company began failing to pay its federal employee withholding taxes. GCAD did not pay its employee withholding taxes for the fourth quarter of 1998 through the third quarter of 1999.

The United States assessed a tax penalty against Pintner in September, 2004, for past due withholding taxes of GCAD in the amount of $252,678.36. On January 20, 2006, Erwin filed a Complaint [Doc. #1] against the United States in response to the United States' assessment of a tax penalty against him for GCAD's unpaid employer withholding taxes. In its Answer [Doc. #4], the United States counterclaimed pursuant to 26 U.S.C. § 6672, seeking to hold Erwin personally liable for GCAD's unpaid tax liabilities. On April 21, 2006, the United States filed a Third Party Complaint [Doc. #9] against Coggin, the Light Brothers, and Pintner,

asserting that each party was liable for unpaid taxes of GCAD.[2] On June 13, 2014, the United States filed a Motion for Summary Judgment [Doc. #154] against Pintner. The Motion is fully briefed and ripe for adjudication.

II.     LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate the presence of a genuine issue of material fact which requires trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1349, 89 L. Ed. 2d 538 (1986).

When making a summary judgment determination, the court must view the evidence and all justifiable inferences from the evidence in the light most favorable to the non-moving party. Zahodnick, 135 F.3d at 913. However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-

---

[2] This Court has already decided the case as against all other parties. On March 18, 2008, this Court granted the United States' Motion for Summary Judgment against Erwin and stayed the case as to the United States' remaining claims against Coggin, the Light Brothers, and Pintner pending resolution of Erwin's appeal. The Fourth Circuit affirmed this Court's Opinion, see Erwin v. United States, 591 F.3d 313 (4th Cir. 2010), and subsequently this Court granted the United States' Motion for Default Judgment against Coggin and the United States' Motion for Summary Judgment against the Light Brothers.

serving opinions without objective corroboration." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The court may not make credibility determinations, and "must disregard all evidence favorable to the moving party . . . that a jury would not be required to believe." Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 436 (4th Cir. 2001).[3]

## III. DISCUSSION

Federal law requires employers to withhold social security and federal income taxes from their employees' wages. 26 U.S.C. §§ 3102(a), 3402(a); Erwin v. United States, 591 F.3d 313, 319 (4th Cir. 2010). Because the employer effectively holds these amounts in trust for the federal government, such taxes are often called "trust fund taxes." 26 U.S.C. § 7501(a); Erwin, 591 F.3d at 319. When an employer fails to remit these employer withholding taxes, the Internal Revenue Code holds certain officers or employees personally liable for the tax deficiency. 26 U.S.C. § 6672; Erwin, 591 F.3d at 319. Section 6672 provides:

---

[3] Pintner asserts that the Court should not consider any of the testimony of the Light Brothers or Coggin because they are not disinterested witnesses to the extent that if Pintner is found liable, his liability will stand to reduce how much the other parties will owe of the tax penalty. Pintner states this as a matter of logic without any evidence that these other parties are indeed interested for purposes of the present motion. The Court notes that the depositions in question were conducted prior to judgment being entered against any of the parties, thus, when the depositions were taken, none of the parties had yet been held liable under § 6672. Moreover, the depositions corroborate one another regarding many material facts. Regardless, the Court need not address this contention because the Court finds Pintner's own testimony sufficient to determine his liability, and consequently the Court need not rely on the testimony of the other parties in this case.

6

> Any person required to collect, truthfully account for, and pay over any tax . . . who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts . . . to evade or defeat any such tax or the payment thereof, shall . . . be liable to a penalty equal to the total amount of the tax . . . not accounted for and paid over.

26 U.S.C. § 6672(a). Thus, "any person who (1) is 'responsible' for collection and payment of [employer withholding] taxes, and (2) 'willfully fails' to see that the taxes are paid," is personally liable. Erwin, 591 F.3d at 319 (quoting Plett v. United States, 185 F.3d 216, 218 (4th Cir. 1999)).

A tax assessment is presumed correct and thus the taxpayer has the burden of proof at trial. United States v. Pomponio, 635 F.2d 293, 296 (4th Cir. 1980). "This presumption is not limited merely to the amount of the assessment but requires that the taxpayer demonstrate that he was not a responsible person or that his failure to pay the taxes was not willful." Id. At the summary judgment stage, once the Government sets forth a prima facie case for tax liability through a tax assessment, the burden shifts to the taxpayer to "establish a genuine issue of material fact concerning the validity of the assessments." United States v. Register, 717 F. Supp. 2d 517, 523 (E.D. Va. 2010). The taxpayer "may not rely on a general denial or self-serving, uncorroborated oral testimony." United States v. MacAlpine, no. 1:13-cv-00053, 2014 WL 1373828, at *3 (W.D.N.C. Apr. 8, 2014); OMOA Wireless S. Der. L. V. United States, No. 1:06-CV-148, 2010 WL 3199959, at *4 (M.D.N.C. Aug. 12, 2010).

The United States argues that there is no genuine issue of material fact that would preclude summary judgment, and accordingly, it is entitled to judgment as a matter of law. Pintner claims that disputed facts exist as to his status as a responsible person and his willfulness in not remitting the tax deficiency. Thus, the Court must decide whether Pintner has met his

7

burden of establishing a disputed material fact as to whether he was (1) a responsible person and (2) who willfully failed to pay GCAD's taxes. The Court now considers each of these prongs in turn.

    A.      Responsible Person under 26 U.S.C. § 6672

To defeat the United States' motion for summary judgment, Pintner must first demonstrate a genuine issue of material fact exists as to his status as a responsible person. Pintner must call into question the United States' tax assessment's validity. A person is "responsible" within the meaning of § 6672 if he is an individual "required to collect, truthfully account for, and pay over any tax." 26 U.S.C. § 6672. The Supreme Court has interpreted this provision to apply to any individual who is in a position to perform at least one of these functions. See Slodov v. United States, 436 U.S. 238, 250, 98 S. Ct. 1778, 1787, 56 L. 2d. 2d 251. "Thus, the Code deems anyone required to 'collect' *or* 'account for' *or* 'remit' taxes a 'responsible person for purposes of § 6672." Erwin, 591 F.3d at 320 (emphasis in original). Under this definition, a single company might have multiple "responsible persons" for § 6672 purposes. E.g. Erwin, 591 F.3d at 320.

Effective power or authority to pay taxes is the key factor in ascertaining whether an individual is a responsible person. Plett, 185 F.3d at 219 (determining that responsible person status depends upon "whether [the taxpayer] had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed" (internal quotations omitted); O'Connor v. United States, 956 F.2d 48, 51 (4th Cir. 1992). An individual's duty to collect, account, or pay taxes is considered "in light of the person's authority over an enterprise's finances or general

8

decision making." O'Connor, 956 F.2d at 51. Thus, "the essential inquiry is whether a person has significant, but not necessarily exclusive, authority over corporate finances or management decisions." Erwin, 591 F.3d at 321; O'Connor, 956 F.2d at 51.

The Fourth Circuit has developed a set of factors to assist in determining whether the circumstances indicate a person was "responsible" within the meaning of § 6672:

> [W]e examine whether the employee (1) served as an officer or director of the company; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the corporation's day-to-day management; (5) had the ability to hire and fire employees; and (6) possessed the power to write checks.

Erwin, 591 F.3d at 321; Plett, 185 F.3d at 219. The factors are not intended to represent an exhaustive list of relevant considerations, and none of the factors have elevated importance. Erwin, 591, F.3d at 321. Instead, the court must consider the totality of the circumstances of the particular case before it. Id. "The focus must . . . be on substance rather than form." O'Connor, 956 F.2d at 51.

In the present matter, the undisputed facts, viewed in the light most favorable to Pintner, establish that Pintner was a "responsible person" within the scope of § 6672. The totality of the circumstances demonstrates that Pintner had the authority and ability to pay taxes, was involved in GCAD's finances, and had substantial decision making power regarding GCAD's operations. As discussed below, the Fourth Circuit factors support a finding that Pintner was a responsible person.

       1.    Officer or Director in Company

Although Pintner was not an officer or director of the company, he was a high-ranking

9

employee who worked closely with the owners and officers of GCAD. Pintner testified that he spoke with Erwin on a daily basis regarding restaurant performance and other matters. While this first factor weighs in Pintner's favor, his duties and level of responsibility, as discussed in more detail below, indicate that Pintner was a responsible person for § 6672 purposes.

2. Control of Company Payrolls

Pintner argues that he did not control payroll.[4] However, Pintner's own testimony demonstrates the contrary. Pintner had the ability to sign payroll checks and the corresponding tax returns. He sometimes signed the payroll checks by hand, although the majority of the payroll checks were signed via the Light Brothers' use of a signature stamp of Pintner's signature. That Pintner's signature—whether signed by hand or by stamp—was apparently required on payroll documents illustrates that Pintner was the party with ultimate authority and responsibility for running payroll. Even if the Light Brothers managed the day-to-day aspects of completing payroll, only Pintner's signature, and not the Light Brothers' signatures, could authorize such checks and tax documents. Pintner cannot now claim that he was not responsible for payroll duties simply because he delegated such tasks to others. See Erwin, 591 F.3d at 322 (observing that "delegation will not relieve one of responsibility" (quoting Purcell v. United States, 1 F.3d 932, 937 (9th Cir. 1993)); see also Bowlen v. United States, 956 F.2d 723,

---

[4] The United States highlights language from the Fourth Circuit's opinion Erwin v. United States, 591 F.3d 313 (4th Cir. 2010), suggesting that Pintner was in control of GCAD's payroll. However, the Court notes that Erwin's liability was the only matter before the Fourth Circuit, and that at the time of the appeal, the United States had not filed a motion for summary judgment against any other party in the case. Therefore, with regard to United States' present Motion for Summary Judgment against Pintner, the Court will assess the liability of Pintner within the bounds of the factual record specific to the present Motion.

10

728 (7th Cir. 1992) ("[D]elegation of the duty to turn over the taxes does not relieve a responsible person from liability."). The control of payroll factor skews toward a finding that Pintner was a responsible person.

3.  Determining Which Creditors to Pay and When to Pay Them

Pintner disputes whether he ever made determinations of which creditors to pay and which to not pay. He asserts that when he first joined GCAD, he was handed an envelope of bills by his predecessor, who informed him that he needed to decide who gets paid. Pintner testified that he then contacted Erwin and Coggin and explained that "I don't do this, okay?" and Erwin and Coggin reassured him that they would take care of it. (Pintner Dep. [Doc. #161-1], at 54:13-55:2.) However, Pintner does not dispute that he recommended hiring the Light Brothers, that he oversaw them, and that he at a minimum participated in some contract negotiations for vendors. Nor does Pintner dispute that he received and validated invoices and bills before forwarding them on to the Light Brothers. As already noted above, "delegation will not relieve one of responsibility." Erwin, 591 F.3d at 322.

Pintner denies that he ever engaged in prioritizing certain creditors to the disadvantage of others. However, Pintner testified that when he received urgent calls from vendors demanding payment, he would inform the Light Brothers of such demands and that the vendor needed to be paid. Even if Pintner did not explicitly direct the Light Brothers to pay such a vendor before or instead of another vendor, Pintner's actions nonetheless illustrate that he had the ability and authority to make decisions about payments to creditors. In his position as the head of all operations for GCAD, Pintner's instructions to the effect of "these guys need to get

11

paid. They're yelling and screaming. Figure out what to pay them, okay?" were a form of prioritization, and they certainly provided a direction of when to pay creditors. (Pintner Dep. [Doc. #161-1], at 55:5-8.) Pintner also testified to participating in the decision making process with Coggin and Erwin to develop a payment plan for past due bills with LoPresti, GCAD's main grocery vendor. Additionally, when asked whether he ever wrote checks to LoPresti, he responded "Yes, probably." (Id. at 53:13-15.) Similarly, when GCAD fell behind on rent payments, Pintner joined Coggin and Erwin in traveling to Orlando, Florida to negotiate with GCAD's commercial lessor. On the whole, even when viewing this evidence in the light most favorable to Pintner, the evidence demonstrates that Pintner made determinations about which creditors to pay and when to pay them. While this factor does not weigh overwhelmingly toward Pintner being responsible, Pintner failed to show he did not effectively prioritize between creditors.

4.  Participation in Day-to-Day Management

Pintner undoubtedly "participated in the corporation's day-to-day management" as the Vice President of Operations. In opposing the present motion, Pintner disputes whether he "ran" GCAD and the extent of his responsibility in managing the day-to-day operations of GCAD. Pintner argues that he was never "in charge of the financial side of the company" However, Pintner's own testimony undisputedly establishes more than a threshold showing of participation in day-to-day operations. Pintner participated in coordinating with vendors, decision making with GCAD's owners, overseeing the Light Brothers, and managing the individual restaurants. The undisputed facts show that Pintner not only participated, but was

indeed in charge of the majority of the day-to-day tasks. He validated bills and invoices. He worked with restaurant managers. His involvement was of a level that led to others perceiving him as president or CEO of GCAD. Such facts indicate substantial participation in the day-to-day management of GCAD.

### 5. Hiring and Firing Ability

Pintner does not dispute that he had authority to hire and fire employees. To the extent he seeks to lessen the importance of this factor by observing that other individuals in GCAD shared this power, the argument is unavailing. As noted above, multiple individuals in a corporation may be a § 6672 responsible person, and an individual need not have "exclusive authority over . . . management decisions." Erwin, 591 F.3d at 321.

### 6. Power to Write Checks

Finally, as already alluded to, Pintner possessed check-writing power. Most—but not all—GCAD checks bearing Pintner's signature were signed with the signature stamp used by the Light Brothers. Pintner argues that while he had official authority to write checks, such authority was only titular in nature. See O'Connor, 956 F.2d at 51 ("[A] party cannot be presumed to be a responsible person merely from titular authority."). However, Pintner testified that he had authority to sign checks, that he did sign checks, and that the Light Brothers had authority to use his signature stamp in signing checks. Moreover, the Light Brothers had authority to use his signature stamp on tax returns. This is not the case of a corporate employee who had check-writing authority but checks were never signed with his or her name; in this instance, "[t]he substance of the circumstances" are such that Pintner exercised his authority by

13

hand-signing checks and by authorizing the Light Brothers to use his signature stamp.  See id.

As the Court's review of the Fourth Circuit's factors demonstrates, Pintner had "significant . . . authority over corporate finances [and] management decisions."  Erwin, 591 F.3d at 321.  As discussed above, the majority of the factors support a finding that Pintner was a responsible person.  Thus, the Court finds that the totality of the circumstances establishes Pintner's responsible person status.  Pintner has failed to identify a dispute of material fact to rebut the tax assessment against him so as to preclude summary judgment.  Having concluded that Pintner was a responsible person within the meaning of 26 U.S.C. § 6672, the Court next turns to whether Pintner acted willfully within the meaning of § 6672.

B.      Willfulness under § 6672

Because the Court has determined that Pintner was a responsible person, Pintner must be able to show a dispute of material fact as to his willfulness in order to prevent summary judgment against him.  Knowledge of the unpaid taxes or reckless disregard for whether tax obligations are satisfied establishes the element of willfulness.  Erwin, 591 F.3d at 325; Plett, 185 F.3d at 219.  "A responsible person's intentional preference for creditors other than the United States establishes wilfulness as a matter of law; such an intentional preference occurs when the responsible person knows of or recklessly disregards an unpaid deficiency."  Erwin, 591 at 325; Plett, 185 F.3d at 219.

Pintner disputes the United States' contentions that he was always aware of the tax deficiencies and that he received a June 1999 letter from Buddy Light regarding the deficiencies accrued at that point in time.  Pintner testified that he "may" have received the June 1999 letter

but does not remember it, and that he did not learn of the unpaid taxes until October 6, 1999. Thus, there is a dispute of fact as to when precisely Pintner learned of the tax deficiency. However, to the extent that Pintner admits that he learned of the delinquent taxes on October 6, 1999, whether he knew sooner is immaterial. Once Pintner was aware of the deficiency beginning in October 1999 and failed to rectify the situation, he willfully failed to pay the delinquent taxes for two months until his departure from GCAD in December 1999. These tax deficiencies corresponded to tax quarters for which Pintner was responsible. As the Fourth Circuit held regarding Erwin's liability in this case, "when a responsible person learns that withholding taxes have gone unpaid in past quarters for which he was responsible, he has a duty to use all current and future unencumbered funds available to the corporation to pay those back taxes." Erwin, 591 F.3d at 326. Thus, once Pintner learned on October 6, 1999, that GCAD was delinquent for tax quarters during his tenure as Vice President of Operations, he had a duty to ensure those taxes were paid.

Pintner contends that his actions were not willful because Erwin and Coggin assured him that they would take care of the delinquent taxes. However, assurance from another person that taxes will be paid does not absolve the responsible person of his duty to pay the taxes. E.g. Erwin, 591 F.3d at 326 (finding that taxpayer acted willfully in not paying taxes and relying on subordinate employees to rectify the problem); Greenberg v. United States, 46 F.3d 239, 241, 244 (3d Cir. 1994) (holding taxpayer acted willfully in not paying taxes despite taxpayer receiving assurances from his superior that tax delinquencies would be paid); Denbo v. United States, 988 F.2d 1029, 1033-34 (10th Cir. 1993) ("Denbo [the taxpayer] cannot escape liability by claiming

15

that he relied on the assurances of others."); Collins v. United States, 848 F.2d 740, 742 (6th Cir. 1988) ("'[The taxpayer's] reliance upon Polk's promise to cover the taxes makes his conduct no less willful, within the contemplation of the statute."); Roth v. United States, 779 F.2d 1567, 1570-72 (11th Cir. 1986) (taxpayer liable under statute despite supervisor's instruction to wait to pay the taxes until anticipated funds were available); Beeler v. United States, 894 F. Supp. 761, 776 (S.D.N.Y. 1995) ("Nor is it a defense if a responsible person does not pay over withholding taxes on the basis of a belief that future revenues would be sufficient to cover the liability."). As a responsible person under § 6672, Pintner had a duty to satisfy the outstanding tax obligation once he was aware of the problem, and he was not entitled to blindly rely on others' representations that they would resolve the situation. See, e.g., Morgan v. United States, 937 F.2d 281, 286 (5th Cir. 1991) ("Reckless disregard includes failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid.").

From October 1999, until December 1999, Pintner had actual knowledge of the tax deficiencies. As a result, he had a duty to use unencumbered funds to pay the tax deficiencies. Pintner failed to do so, despite having undisputed check-writing power and authority over incoming bills and invoices. Pintner has not shown a dispute of material fact so as to prevent summary judgment. Viewing the undisputed evidence in the light most favorable to Pintner, the Court finds that Pintner's actions were willful within the meaning of § 6672. The Court therefore concludes that the United States has presented undisputed evidence sufficient to establish, as a matter of law, that Pintner willfully failed to pay over employer withholding taxes. Accordingly, the Court concludes that Pintner is indebted to the United States for unpaid

employer withholding taxes assessed against him, plus the applicable interest accruing according to law.

IV. CONCLUSION

For the reasons stated above, the United States is entitled to judgment as a matter of law based upon the Court's finding that Pintner was a responsible person who acted willfully in failing to remit GCAD's employer withholding taxes to the United States for the tax quarters ending December 31, 1998, March 31, 1999, June 30, 1999, and September 30, 1999. Pursuant to 26 U.S.C. § 6672, Pintner is therefore subject to liability for those taxes, in the amount of $344,660.18, plus the interest that has and will accrue according to law from April 14, 2014. The Court hereby grants the United States' Motion for Summary Judgment [Doc. #154] against Pintner and further orders, adjudges, and decrees that the United States should recover from Pintner the amounts set forth herein.

IT IS THEREFORE ORDERED that the United States' Motion for Summary Judgment [Doc. #154] is hereby GRANTED, and the United States shall recover from Pintner the indebted amount of $344,660.18, plus the interest that has and will accrue according to law from April 14, 2014. A Judgment consistent with this Memorandum Opinion and Order will be filed contemporaneously herewith.

This the 17th day of November, 2014.

_____
United States District Judge